IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| BRADLEY COOK | § | |
| | § | |
| Appellant | § | |
| | § | |
| v. | § | No. 21-2499 |
| | § | |
| UNITED STATES | § | |
| | § | |
| Respondent | § | |

## APPLICATION FOR CERTIFICATE OF APPEALABILITY

After a limited evidentiary hearing, the district court denied relief on Mr. Cook's motion under 28 U.S.C. § 2255, and also denied a certificate of appealability (COA). Mr. Cook now seeks a COA in this Court as to Grounds 1-6 of his motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Cook entered a plea of guilty on December 20, 2011, to one count of Commercial Sex Trafficking (18 U.S.C. §§ 1591(a) and (b)(1), 1594, and 2) with an agreed sentence of twenty years' imprisonment. (*United States v. Bagley*, 4:16-CV-1072-BCW, hereafter "criminal case.") After an unsuccessful appeal, Mr. Cook moved for post-conviction

1

relief under 28 U.S.C. § 2255. (DCD 1). His petition, and a COA, were denied. This appeal follows.

Mr. Cook was represented at the plea and sentencing proceedings by attorneys Carter Law and Lance Sandage. Ms. Law was Mr. Cook's primary attorney. Mr. Sandage was local counsel.

Mr. Cook's petition contained nine grounds for relief: Ineffective assistance of counsel for failure to investigate the case before recommending a plea of guilty (Ground 1), ineffective assistance of counsel for failing to properly advise Mr. Cook of the effect of his proffer session with government agents (Ground 2), prosecutorial misconduct, including three sub-claims (Ground 3), ineffective assistance of counsel for failing to move for dismissal due to prosecutorial misconduct (Ground 4), ineffective assistance of counsel for failure to respond properly to evidence that attorney-client phone calls between the attorney and Mr. Cook were recorded and provided to the government (Ground 5), ineffective assistance of counsel when another attorney, Arthur Margulis, attempted to represent Mr. Cook despite a conflict of interest (Ground 6), prosecutorial misconduct by withholding exculpatory evidence (Ground 7), ineffective assistance of counsel for

2

failure to have Mr. Cook's competence to proceed evaluated (Ground 8), and that Mr. Cook's plea was involuntary because it was coerced by this conditions of confinement (Ground 9).

The district court denied relief on most of Mr. Cook's grounds for relief, but granted an evidentiary hearing on the issue of the recording of his attorney-client calls. DCD 35. Prior to the hearing, Mr. Cook filed a motion to reconsider the court's rulings on the additional grounds. DCD 37. The court denied the motion without prejudice, finding that Mr. Cook was entitled to raise the same grounds in a motion under Fed. R. Civ. P. 59(e). DCD 59. Following the hearing, the court denied the entire petition, and denied a COA as to all grounds. DCD 71. The court then denied a timely motion under Rule 59(e), and reaffirmed its denial of a COA. DCD 73, 82.

## COA Standards

A movant under 2255 is entitled to a certificate of appealability (COA) if he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the issue before the court is one about which reasonable jurists could disagree:

Appellate Case: 21-2499    Page: 3    Date Filed: 09/07/2021 Entry ID: 5073351

[O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.' [Citations omitted].

*Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994).

The standard is minimal; As the Court in *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) stated: "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Therefore, doubts as to whether to issue a certificate of appealability should be resolved in favor of the appellant. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997); see *Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991); *Buie v. McAdory*, 322 F.3d 980 (7th Cir. 2003).

The Court revisited the COA standard in *Buck v. Davis*, 137 S.Ct. 759, 773-774 (2017). There, the court rejected the reasoning of the Fifth Circuit denying a COA, holding that the court had improperly reviewed the merits of the claim:

4

We reiterate what we have said before: A "court of appeals should limit its examination [at the COA stage] to a threshold inquiry into the underlying merit of [the] claims," and ask "only if the District Court's decision was debatable." *Miller–El*, 537 U.S., at 327, 348, 123 S.Ct. 1029.

### Facts.

Mr. Cook's case began when he was interviewed in 2009 by FBI agents investigating allegations of commercial sex trafficking by Edward Bagley in Lebanon, Missouri. Subsequently, Mr. Cook's house was searched pursuant to warrant, and all of his computer equipment, including his business records, was seized. It has never been returned.

Before indictment, upon his attorney's advice, Mr. Cook participated in a proffer session. Although the proffer agreement said specifically that it did not confer "transactional immunity," Mr. Cook stated in a sworn declaration that he was told, and believed, that if he participated in the proffer session he could not be charged with any conduct discussed there. DCD 34-1. His attorney stated in a sworn declaration that "I never understood the proffer agreement to confer immunity from prosecution. . . and I never so represented to him." DCD 18-1, p. 1.

5

Following his indictment, Mr. Cook was held at CCA Leavenworth (now Corecivic) after transfer from St. Louis where he was arrested. At least two of his telephone calls with his attorney while he was at CCA were recorded, and the recordings were provided to counsel for the government. At the evidentiary hearing in this case, (DCD 65), the government contended that CCA was responsible for ensuring that attorney calls were not provided to the government, and that the two calls provided in discovery were the only attorney calls that were provided in error.

While Mr. Cook was at CCA, another inmate attempted to solicit Mr. Cook to have the assistant U.S. Attorney (hereafter "AUSA") involved in Mr. Cook's case killed. After the United States Attorney for the Western District of Missouri was recused from investigating a claim against one of its own staff, the possible "plot" to kill the AUSA was investigated by the U.S. Attorney for the District of Kansas. At the government's request, the inmate who made the claim against Mr. Cook wore a recording device, and attempted to solicit Mr. Cook. Mr. Cook told the other inmate he was not interested. The District of Kansas declined to press charges.

6

After Mr. Cook declined to participate in any murder plot, on December 9, 2010, he was transferred from CCA. From that time until he was sentenced, he was essentially in isolation, unable to communicate by phone or receive visits with anyone but his attorney.

Mr. Cook presented information in his petition and traverse from two former inmates of CCA indicating an attempt by a group of inmates at CCA to improve their own situations by pooling information that could be used against Mr. Cook. One of them, Diamond Blair, stated that he observed other detainees at CCA "discussing 'jumping on' Mr. Cook's criminal case with the help of District Attorney Beth Phillips. These inmates were arguing over what to say/write to Ms. Phillips, who wanted to 'cook' Cook's ass. . . ." DCD 34-6. Another former inmate, James Clark, found a letter in Nathan Taylor's area which he sent to Mr. Cook's father. DCD 34-7. The letter was not sent to CCA, but to another facility, and that facility's documentation was attached to it. There is simply no way, without government participation, that this document could have made its way into CCA. Mr. Clark stated, "I heard. . . inmates say they were being promised time cuts for testimony against Brad and that they needed to get their stories straight so they

7

would meet and discuss/share information about Brad that their people would give them." *Id.*

George Cook, Mr. Cook's father, retained St. Louis attorney Arthur S. Margulis to represent George and the rest of the family in connection with unsubstantiated accusations by the Government that George Cook was also somehow involved in the fabricated plot to kill the AUSA. George Cook then retained Mr. Margulis to assist in Bradley Cook's representation. Mr. Cook never assented to Mr. Margulis's representation. Nonetheless, representatives of the government informed both Mr. Cook and Ms. Law that Ms. Law no longer represented Mr. Cook, and therefore could not visit him in detention. Eventually, this situation was resolved, and Ms. Law continued to represent Mr. Cook. However, representatives of the government conferred with Mr. Margulis regarding the case and met privately with Mr. Margulis and George Cook without Mr. Cook or his lawyer present. At that meeting, the AUSA and other staff gave Mr. Cook and Mr. Margulis access to very detailed information and discovery in the case in an attempt to convince George Cook to convince his son to plead guilty. They also denigrated Mr. Cook's counsel of choice, Carter Law.

8

George Cook and Mr. Margulis were invited by the government to attend plea negotiations with Mr. Cook and his attorneys.

Under the advice of Mr. Margulis and pressure from the AUSA, George Cook and his wife decided to cut off funding for Mr. Cook's defense and to advise both Mr. Cook and his lawyers that they would not be paying any funds necessary to the trial of the case. Under pressure from government threats, including threats to charge additional counts, interference with his representation, and extended isolation in detention, and without the benefit of a full investigation of his case, Mr. Cook reluctantly accepted a plea agreement to one count of the superseding indictment with an agreed sentence of twenty years.

In addition to coercion by the government, Mr. Cook's decision to plead guilty was also the result of a lack of information his counsel could—and should—have investigated before recommending the plea. There were significant problems with discovery, which not only constitute improper governmental conduct but also ineffective assistance of counsel for failing to enforce the right to discovery.

Appellate Case: 21-2499    Page: 9    Date Filed: 09/07/2021 Entry ID: 5073351

The court approved the plea agreement, and Mr. Cook was sentenced to twenty years' imprisonment followed by lifetime supervised release.

## ISSUES WARRANTING COA

## I. DENIAL OF EVIDENTIARY HEARING

A habeas petitioner is "entitled to careful consideration and plenary processing of his claims, including *full opportunity for presentation of the relevant facts*." *Blackledge v. Allison,* 431 U.S. 63, 83-84 (1977) (emphasis added). The district court must grant a hearing "[w]here [a] petitioner's allegations, if true, amount to ineffective assistance of counsel . . . unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.' " *Carnnahan v. United States*, 778 Fed. Appx. 404 (8th Cir. June 20, 2019) (citing *Watson v. United States,* 493 F.3d 960, 964 (8th Cir. 2007) (third alteration in original) (citation omitted). A petitioner must merely assert facts to be entitled to a hearing; he need not "establish" them by evidence in the pleadings. *United States v. Weeks,* 653 F.3d 1188, 1200 (10th Cir. 2011).

Appellate Case: 21-2499   Page: 10   Date Filed: 09/07/2021 Entry ID: 5073351

A ground for relief is facially adequate so long as it alleges the elements of an ineffective assistance of counsel claim. *Witthar v. United States,* 793 F.3d 920, 923 (8th Cir. 2015). When a district court receives conflicting statements from a habeas petitioner and counsel, it cannot "'mak[e] a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" *Id.* (citing *Franco v. United States*, 762 F.3d 761, 765 (8th Cir. 2014)).

In its order denying relief (DCD 35), that is exactly what the district court did. The court made multiple findings of fact that were specifically contradicted by statements in the record, seemingly basing its findings on the implicit but unstated finding that it did not believe Mr. Cook's sworn declaration, even though the record did not conclusively establish that any aspect of it was false. Failing to grant a hearing on the basis of statements in contradictory affidavits was in direct conflict with the precedent well-established by *Blackledge, Watson* and *Witthar*, and that was reaffirmed by the Eighth Circuit in *Carnnahan v. United States*, a decision based on precedents so well-established that the Court did not feel a need to include them again in

11

a published opinion. The district court's denial of an evidentiary hearing is debatable among jurists of reason.

The specific issues requiring an evidentiary hearing are discussed below in connection with each ground.

### Ground 1

This ground alleges multiple instances in which trial counsel failed to perform the full investigation required by *Strickland v. Washington*, 466 U.S. 668 (1984), before advising Mr. Cook to enter a plea of guilty. Specifically, the petition alleged the failure to investigate Mr. Cook's phone records, which would have established where his phone was located at times when he allegedly visited the home of his co-defendant, Mr. Bagley, and the failure to investigate witnesses who could have provided evidence that Mr. Cook was not in Lebanon, Missouri but was in Ste. Genevieve, Missouri at times when the government alleged that Mr. Cook was engaged in offense-related activities.

In support of these allegations, Mr. Cook presented his own sworn declaration (DCD 35-1), the declarations of Mark and Candise

12

Uhles, DCD 35-4, 5, and the declaration of forensic expert Greg Chatten. DCD 37-1. These documents indicated that the evidence that Mr. Cook said should have been investigated in fact existed before trial, but was not developed by trial counsel.

The district court found that trial counsel's decision to cease forensic investigation at the time of the plea offer was a reasonable strategic decision under the circumstances, and that even if it was not, it was not a mistake that would have altered Mr. Cook's decision to plead guilty. It further asserted that, "the existence of uninvestigated innocuous communications" would not have reached the level of deficiency and prejudice necessary to show ineffective assistance of counsel and asserts that the, "failure to investigate phone records, possible witnesses, and the Government's assertion that FV was disabled" were reasonable strategic decisions under the circumstances. DCD 35, p. 6. This conclusion is debatable among jurists of reason.

First, the district court's assertion that Mr. Cook would not have gone forward with his plea even if his counsel had not committed these errors directly contradicts facts asserted in the

13

original petition and sworn to in Mr. Cook's declaration. DCD 34-1 at 2-3. Mr. Cook's statement that he would not have pleaded guilty but for these errors is not directly contradicted by anything in the record. Under *Witthar* and *Franco*, an evidentiary hearing is required before the district court can conclude that Mr. Cook's declaration as to these issues is not credible.

Moreover, the basis for the district court's decision in other aspects is not supported by anything in the record. Neither Ms. Law, Mr. Sandage, nor any other counsel said that the reason for failing to contact certain witnesses or share the results of that investigation with counsel was a strategic decision. Rather, Ms. Law said that she investigated multiple witnesses, and that Mr. Cook knew everything she knew about the case. Doc. 18-1 at 3-5. Mr. Cook, in contrast, said that he was not aware that witnesses recalled being with him on certain dates in question. Doc. 34-1 at 2. This can only lead to two conclusions[1]: 1) Ms. Law and her team did not speak to these

---

[1] A third possible conclusion, of course, is that either Mr. Cook or Ms. Law was not truthful in his/her declaration in this regard. But, as established above, such a credibility determination is not one the law permitted the district court to make absent an evidentiary hearing.

14

witnesses, or 2) She did not communicate the information they gave her to Mr. Cook. Either one is a failure of counsel. Finally, Ms. Law's affidavit, and the fact that she made a trip to Lebanon for the specific purpose of locating and interviewing witnesses supports the idea that Ms. Law herself believed, as a matter of strategy, that speaking with these witnesses was important.

In performing a *Strickland* analysis, the court should not create strategic reasons not endorsed by counsel. "Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer." *Davis v. Lambert*, 388 F.3d 1052, 1064 (7th Cir. 2004). (*quoting Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990)). As the court explained in *Alcala v. Woodford*, 334 F.3d 862, 871 (9th Cir. 2003), "We will not assume facts not in the record in order to manufacture a reasonable strategic decision for trial counsel." *Washington v. Murray*, 4 F.3d 1285, 1289 (4th Cir. 1993). ("[T]he district court should not have constructed a tactical decision counsel might have made, but obviously did not,"), citing *Griffin v. Warden*, 970 F.2d 1355, 1358-1359 (4th Cir. 1992). (Court may not "conjure up

15

tactical decisions an attorney could have made, but plainly did not. . . .").

With respect to the forensic examination of Mr. Cook's phone, the evidence presented to the district court by Mr. Cook clearly demonstrates that additional evidence could have been obtained from the phone. Greg Chatten's declaration and supporting documents, based on evidence obtained from Sprint in April, 2019 but never obtained by trial counsel, demonstrates that on at least one occasion when the government contended that Mr. Cook was in Lebanon based on phone records, his phone was in fact elsewhere. Again, at a minimum, this evidence requires a hearing. Trial counsel said she reviewed the phone records, but did not suggest that she went beyond that. The district court's decision that counsel's failure to go further was a matter of reasonable trial strategy is debatable among jurists of reason.

At an evidentiary hearing, Mr. Cook would present this information, as well as the testimony of witnesses who would further confirm this alibi defense. Even if Ms. Law had a strategy reason (which she did not endorse) for not interviewing these witnesses, a

16

failure to investigate an alibi defense, despite her client's assertions that such evidence existed, could not, in any case, be considered a reasonable strategic decision. *Foster v. Wolfenbarger*, 687 F.3d 702 (6th Cir. 2012) (Counsel ineffective for failing to investigate alibi defense); *Bigelow v. Haviland*, 576 F.3d 284 (6th Cir. 2009) (Same); *Avery v. Prelesnik*, 548 F.3d 434 (6th Cir. 2008) (same).

The district court's decision to deny Ground 1 without a hearing is, at a minimum, debatable among jurists of reason. A COA is therefore required.

### Ground 2

The district court based its denial of this ground on the signed proffer letter and Ms. Law's declaration, both of which suggest that Mr. Cook was never promised transactional immunity. But Mr. Cook never alleged that he was actually promised transactional immunity. Instead, Mr. Cook stated in his declaration that Ms. Law had ***told him*** that as long as he didn't lie and didn't tell anyone about the proffer, he could not be prosecuted for any crimes he spoke about during the proffer session. Doc. 34-1 at 2-3. He also said that he saw the proffer letter for

17

the first time when he was in the office for the proffer meeting with the agents and did not understand that it did not offer what he and Ms. Law discussed.

Ms. Law's declaration contradicted Mr. Cook's on this issue. As discussed above, the district court could not properly resolve this credibility issue without a hearing. Witthar, supra. Thus, its decision is debatable among jurists of reasons. Moreover, the record also strongly supports that Mr. Cook's statements about Ms. Law's advice were true, despite her declaration to the contrary. In a Motion To Dismiss Ms. Law filed on Mr. Cook's behalf in the criminal case, she argued that all counts against Mr. Cook should be dismissed because, "Bradley Cook was provided with a written agreement, signed by the government, promising him immunity in return for his cooperation with government agents," that Mr. Cook had complied with that agreement, and that the government breached that agreement in prosecuting him. (DCD 37-3). If Ms. Law filed this pleading in good faith, it is clear that she believed at that time that Mr. Cook *did* have transactional immunity, whatever she thought when she filed her declaration. Given this pleading, it is

18

certainly highly likely that she advised Mr. Cook before his proffer that he would be immunized from prosecution if he admitted crimes.

Finally, it is clear that the result would have been different but for the detailed counseled statements Mr. Cook made to Government agents during his proffer session under the belief that he would receive complete immunity. Not only were the statements made at the proffer session more detailed than what he had said in prior meetings with investigators, they also gave the Government numerous additional investigative leads to further build the case against him.

The decision to deny relief on this ground without an evidentiary hearing is debatable among jurists of reason, and a COA is required.

## Ground 3

### A. Improper influence of witnesses

The statements of the two former inmates at CCA described above were the only evidence identified by the government pertaining to an alleged plot by Mr. Cook to kill the prosecutor and/or victim. If government agents aided and abetted these snitches, the integrity of

19

the judicial process in this case is in serious question. And that is what the former inmates alleged.

The district court rejected this ground without a hearing because these witnesses did not testify at trial. DCD 35, p. 17. However, Mr. Cook stated in his declaration that he would not have entered his plea of guilty had he known of this evidence. DCD 34-1, p. 5. And if the government, as alleged, participated in implicating Mr. Cook in a nonexistent plot to kill a prosecutor in order to gain an advantage in the litigation, that is a clear violation of due process. The record before the district court thus established that Mr. Cook's plea was affected by this issue. The district court's decision to deny a hearing on this ground is debatable among jurists of reason.

### B. Interference with conditions of confinement

Mr. Cook alleged that he was induced to plead guilty by the fact that, after the false allegation of the plot against the prosecutor, he was held in isolation for approximately one year. The district court found that he "has not established that the determination to hold him in isolation was punishment, as opposed to the result of effective management of the detention facility." DCD 35 p. 18. But the district

20

court had no evidence before it as to why Mr. Cook was placed in isolation. And Mr. Cook stated in his sworn declaration that his conditions of confinement influenced his plea. DCD 34-, p. 4. Mr. Cook was entitled to "a full opportunity for presentation of the relevant facts" *Blackledge*, at 83-84. He was not required to "establish" the facts he alleged in order to obtain a hearing. *Weeks*, supra.

## C. Interference with attorney-client relationship

There is clearly a credibility issue and an issue of fact with respect to the participation of attorney Arthur Margulis in Mr. Cook's case. The declarations of Mr. Cook, Ms. Law, and Mr. Margulis all conflict to some extent. Again, the district court's determination that this conflict did not prejudice Mr. Cook, made without conducting a hearing, is debatable among jurists of reason.

## D. Interference with confidential telephone calls.

The district court conducted a limited hearing based on the fact that discovery provided to trial counsel included recordings of two attorney-client telephone calls. The district court's conclusion that these were the only two calls intercepted by the government conflicts with the

21

order in *United States v. Black*, Case No. 2:16-CR-20032-JAR, Doc, 758, p. 81. It is therefore debatable among jurists of reason.

For the above reasons, a COA is required as to each portion of Ground 3.

### Ground 4

The district court stated that it was "inclined to find" that trial counsel's failure to move to dismiss the indictment based on prosecutorial misconduct had a reasonable strategic basis. Trial counsel stated in her declaration that she rarely files such motions and would not do so without a conclusive evidentiary basis. DCD 18-1. However, she filed a Motion to Reconsider Bond which raised the same facts and arguments that would have formed the basis for a Motion to Dismiss. See criminal case DCD 189, p. 8. She also filed a motion to dismiss based on another type of prosecutorial misconduct, the breach of the proffer agreement. DCD 37-3. This conclusion, again without a hearing at which counsel could have been asked to explain her reasons for not filing this motion, is debatable among jurists of reason, and a COA is required.

22

## Ground 5

The district court found that trial counsel was not ineffective for failing to move for relief when she learned, through discovery, that at least two of Mr. Cook's attorney-client calls had been recorded and provided to the government. The district court specifically found that this was a reasonable strategic decision because the government, at a hearing years later, presented evidence that no member of the prosecution team actually listened to the recording. DCD 82, p. 9. Of course, when counsel received the discovery, she had no way of knowing that the government agents would *later* testify that they did not review the discovery they themselves provided. The case cited by the district court *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) holds that under the circumstances of that case, DeRoo could not show prejudice. It does not pertain to the issue of reasonable trial strategy. The district court's finding is debatable among jurists of reason, and a COA is required.

Appellate Case: 21-2499    Page: 23    Date Filed: 09/07/2021 Entry ID: 5073351

## Ground 6

Mr. Cook pled in his petition and traverse that the government had failed to disclose electronic evidence it had obtained from his computers. At the time the traverse was filed, Mr. Cook had not received from the government any discovery in response to his motion for discovery which the court had granted. Instead, the district court told Mr. Cook's counsel, with respect to the discovery motion, "If you're not able to include it in the reply like you wanted, I'm going to let you present it as evidence. You know what I mean?" DCD 80, p. 6.

The district court then found, without hearing any evidence to the matter, that the failure to disclose certain electronic discovery meant that the Government was working to produce that and just had not done so yet, not that they were seeking to suppress it. DCD 35, p. 21. But an evidentiary hearing is required to make these determinations. Specifically, the district court's finding that "the Government was working with Cook's expert to produce everything reflected on the Government's inventory list for electronic discovery at the time Cook decided to plead guilty," *Id.*, is completely unsupported by the record.

24

This conclusion is therefore debatable among jurists of reason, and a COA is required.

## CONCLUSION

For the foregoing reasons, Mr. Cook prays the Court for a COA as to Grounds 1-6 of his motion under § 2255.

Respectfully submitted,

CARLYLE PARISH LLC

/s/ Elizabeth Unger Carlyle

Elizabeth Unger Carlyle
Kathryn B. Parish
6320 Brookside Plaza #516
Kansas City, MO 64113
Mo. Bar No. 41930
(816) 525-6540
elizabeth@carlyleparishlaw.com
ATTORNEYS FOR APPELLANT

Appellate Case: 21-2499    Page: 25    Date Filed: 09/07/2021 Entry ID: 5073351

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because this document contains 4,735 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2015 and Century font 14 point.

/s/ Elizabeth Unger Carlyle
_____
Elizabeth Unger Carlyle


### CERTIFICATE REGARDING SERVICE
I hereby certify that on September 7, 2021, the foregoing was

served by this court's electronic filing system on all counsel of record.


/s/ Elizabeth Unger Carlyle
_____
Elizabeth Unger Carlyle

Appellate Case: 21-2499    Page: 26    Date Filed: 09/07/2021 Entry ID: 5073351